UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RICE PAINTING COMPANY, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil No. 4:15 CV 1064 JMB |
| ) | |
| DEPOSITORS INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the motion of plaintiff Rice Painting Company for summary judgment, pursuant to Rule 56, Fed.R.Civ.P. Defendant Depositors Insurance Company has filed a response in opposition and the issues are fully briefed. All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

**I.    Factual Background**

    **A.    The Raineri Contract**

Plaintiff is a professional painting contractor. On June 10, 2013, Raineri Construction ("Raineri") hired plaintiff to provide painting and remediation work as a subcontractor on a St. Louis Public Schools' ("SLPS") project at Roosevelt High School. Complaint at ¶ 5 [Doc. #7]. Raineri's contract with SLPS provided that "all painted surfaces and buildings constructed prior to 1980 should be assumed to contain lead within the paint," and that "Raineri was to require their tradesmen to conduct their business in accordance with OSHA . . . and USEPA's Renovation on Repair and Painting Rule (RRP)." Raineri Const. LLC v. Special Admin. Bd. of the Trans. Dist. of the City of St. Louis, Mo. at al., Cause No. 1522-CC10210, First Am. Pet. at ¶ 7 ("Raineri petition"). [Doc. # 38-8]. After plaintiff began work, SLPS's environmental

consultant conducted a site inspection for lead dust at Roosevelt High School. Following this inspection, the consultant issued a report that recommended cleaning the areas that failed the "lead dust clearance testing." Id. at ¶ 22.

SLPS undertook cleanup operations between June 29, 2013, and September 20, 2013. Id. at ¶ 23. SLPS incurred substantial costs remedying the lead contamination and refused to pay Raineri for its services until it was reimbursed for these costs. See id. at ¶¶ 25-26. Raineri filed suit against SLPS to recover the remainder of its fees for the Roosevelt project. Raineri also named plaintiff as a defendant to the suit on the theory that plaintiff should be responsible for the damages if the court found SLPS was not required to pay Raineri the remainder of its fees.[1] Id. at ¶ 27. Raineri alleges in the underlying action that plaintiff failed to properly scrape and remove the existing paint, secure the work site to prevent the spread of lead contaminants to other areas, follow required environmental precautions, require its employees to wear protective equipment, and use proper controls to minimize reintroducing lead into the air. Id. at ¶ 58. Plaintiff claims it has incurred significant expense to defend itself in the Raineri proceeding. Statement of Uncontroverted Material Facts ("SUMF") at ¶ 15 [Doc. # 38].

### B. The Depositors Insurance Company Policy

Prior to the SLPS project, plaintiff purchased from defendant a policy of commercial general liability insurance coverage (the "Policy") with a limited pollution coverage endorsement (the "Pollution Endorsement") for the policy period of June 28, 2012 to June 28, 2013. [Doc. # 38-1]. After Raineri made demand on plaintiff for indemnification [Doc. # 38-5], plaintiff made a written demand upon defendant to provide a defense and indemnification against SLPL's claims, pursuant to the Pollution Endorsement. SUMF at ¶ 12. In response, defendant

---

[1] Also named as a defendant was Huddy Painting, LLC, with whom Raineri contracted to provide similar services at Sumner High School, where lead contamination was also found.

2

determined that the claim was not covered by the Policy and notified plaintiff that it was denying the claim. Denial letter [Doc. # 38-7]. Plaintiff filed this declaratory judgment action,[2] seeking a declaration that defendant is obligated to provide a defense in the Raineri action.

As relevant to this dispute, the Policy includes a "Commercial General Liability Coverage Form" ( the "Coverage Form"), which sets out the basic insuring agreement; an endorsement entitled "Limited Pollution Coverage — Job Sites" (the "Pollution Endorsement"); and an endorsement entitled "Exclusion — Asbestos, Electro-Magnetic Radiation, Lead and Radon" (the "Lead Exclusion").

The introductory paragraph of the Coverage Form states that "[v]arious provisions in this policy restrict coverage" and the insured should "read the entire Policy carefully to determine rights, duties and what is and is not covered." Policy at p. 22 [Doc. # 38-1]. Section 1 of the Coverage Form states that defendant "will pay those sums that the insured becomes legally obligated to pay as damages because of property damage to which the insurance applies." Id. The Coverage Form also states that defendant has the duty to defend the insured against any suit seeking those damages. Id. However, this duty to defend does not extend to an action against the insured for damages to property or bodily injury to which the insurance does not apply. Id.

The Pollution Endorsement provides additional coverage beyond what appears in the Coverage Form and provides in relevant part: "We will pay those sums that the insured becomes legally obligated to pay . . . [a]s clean-up costs because of 'environmental damage' which directly results from physical injury to tangible property . . . to which this insurance applies. We will have the right and duty to defend any 'suit' seeking these damages. We may at our

---

[2] Plaintiff filed suit in the Circuit Court for the Twenty-First Judicial Circuit (St. Louis County). Defendant timely removed the matter to this Court, invoking diversity jurisdiction under 28 U.S.C. § 1332. The Court rejected plaintiff's argument that the Court should abstain from exercising jurisdiction and remand the matter to State court. [Doc. # 18].

3

discretion investigate any 'pollution incident' and settle any claim or 'suit' that may result." Pollution Endorsement, Section A.1, Id. at p. 55. Plaintiff argues it is entitled to a defense under this provision. Complaint at ¶ 14 [Doc. # 7].

The pollution insurance applies to environmental damage only if:

1) The . . . "environmental damage" arises out of a "pollution incident":

    a) on or from "your job site" in the "coverage territory";

    b) that is demonstrable as beginning and ending within 72 hours of the "pollution incident"; and

    c) that is accidental.

Pollution Endorsement, Section A.1.b(1) [Doc. # 38-1 at 55].

"Pollution incident" is defined as "the actual or alleged emission, discharge, release or escape of 'pollutants' from your 'job site' provided that such emission, discharge, release, or escape results in 'environmental damage.'" Pollution Endorsement, Section E [Doc. # 38-1 at 58].

The Pollution Endorsement also sets forth several exclusions that further limit the availability of coverage. As relevant here, coverage is excluded for a "pollution incident" that is "directly or indirectly attributable to [an insured's] failure to comply with any applicable statute, regulation, ordinance, directive or order relating to protection of the environment." Pollution Endorsement, Section A.2.k, Id. at 56. Coverage is also excluded where "the pollutants are not brought on or to 'your work site' by [the] insured." Pollution Endorsement, Section A.2.q, Id. at 57.

## II. Standard of Review

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under

4

Rule 56, a party moving for summary judgment bears the burden of demonstrating that no genuine issue exists as to any material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Once the moving party discharges this burden, the non-moving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Id. at 247. The non-moving party may not rest upon mere allegations or denials in the pleadings. Id. at 256. "Factual disputes that are irrelevant or unnecessary" will not preclude summary judgment. Id. at 248. In ruling on a motion for summary judgment, the court must construe all facts and evidence in the light most favorable to the non-movant, must refrain from making credibility determinations and weighing the evidence, and must draw all legitimate inferences in favor of the non-movant. Id. at 255.

### III. Discussion

Federal jurisdiction in this case is based upon diversity of citizenship. 28 U.S.C. § 1332(a). In a diversity action such as this, "[s]tate law governs the interpretation of insurance policies." Secura Ins. v. Horizon Plumbing, Inc., 670 F.3d 857, 861 (8th Cir. 2012). Thus, Missouri law will be applied to resolve this dispute. See Hartford Underwriter's Ins. Co. v. Estate of Turks, 206 F. Supp. 2d 968, 974 (E.D. Mo. 2002) (Missouri law applied to resolve insurance dispute where parties did not argue otherwise).

"The interpretation of an insurance policy is a question of law." McCormack Baron Mgmt. Servs. v. Am. Guar. & Liab. Ins. Co., 989 S.W.2d 168, 171 (Mo. 1999) (en banc) "The cardinal rule in the interpretation of a contract is to ascertain the intention of the parties and to

give effect to that intention." J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club, 491 S.W.2d 261, 264 (Mo. 1973) (en banc). "The intention of the parties 'is presumptively expressed by the plain and ordinary meaning' of the policy's provisions . . . which are read 'in the context of the policy as a whole.'" Interstate Bakeries Corp. v. OneBeacon Ins. Co., 686 F.3d 539, 543 (8th Cir. 2012).

### A. Standard for Duty to Defend

An analysis of an insurer's duty to defend must begin with the plaintiff's petition and the insurance policy. Standard Artificial Limb, Inc. v. Allianz Ins. Co., 895 S.W.2d 205, 210 (Mo. Ct. App. 1995) ("The duty of a liability insurer to defend pursuant to its policy is determined by comparing the language of the insurance contract and the allegations of the petition in the action brought by the person injured or damaged."). "The obligation of the insurer to defend arises only as to claims and suits for damages covered by the terms of the policy." Benningfield v. Avemco Ins. Co., 561 S.W.2d 736, 737 (Mo. Ct. App. 1978). "The plaintiff is the master of the [petition], and if [he or she] does not seek covered damages, there is no duty to defend." Trainwreck West Inc. v. Burlington Ins. Co., 235 S.W.3d 33, 41-42 (Mo. Ct. App. 2007) (citing William T. Barker, "When Can Extrinsic Evidence Defeat the Duty to Defend?" in New Appleman on Insurance: Current Critical Issues in Insurance Laws III.C (April 2007) (alterations in original)).

"The insurer owes no duty of defense where . . . the allegations of the claimant's petition and the insurance contract demonstrate that coverage does not apply." Benningfield, 561 S.W.2d at 737; see also Custom Hardware Eng'g & Consulting, Inc. v. Assurance Co. of Am., 295 S.W.3d 557, 561 (Mo. Ct. App. 2009) ("To extricate itself from a duty to defend a suit against the insured, the insurer must demonstrate that there is no possibility of coverage."). Rather, an insurer only owes the insured a duty to defend "[i]f the complaint alleges facts which state a

6

claim potentially or arguably within the policy's coverage." Superior Equipment Co., Inc. v. Maryland Cas. Co., 986 S.W.2d 477, 481 (Mo. Ct. App. 1998); see also McCormack Baron Mgmt. Servs., 989 S.W.2d at 170-71 ("If the complaint merely alleges facts that give rise to a claim potentially within the policy's coverage, the insurer has a duty to defend."). The insured has the burden under Missouri law of proving this possibility of coverage, and the insurance company has the burden of proving an exclusion to coverage. Truck Ins. Exch. v. Prairie Framing, LLC, 162 S.W.3d 64, 80 (Mo. Ct. App. 2005).

### B. The Pollution Endorsement

Plaintiff asserts that defendant has a duty to defend against Raineri and SLPS's claims arising from the Pollution Endorsement's "environmental damage" coverage. The Pollution Endorsement specifically identifies two prerequisites to coverage: First, the environmental damage must begin and end within 72 hours of the "pollution incident" — in this case, the release of lead dust into Roosevelt High School. According to allegations in the Raineri petition, the cleanup of the lead dust occurred between July 29, 2013, and September 20, 2013, and cost nearly $250,000. Raineri petition at ¶¶ 23, 25. Thus, the damage did not begin and end within 72 hours of the release of the lead dust.

In addition, the pollution incident must be "accidental." Pollution Endorsement, Section A.1.b(1). The term "accident" as used in a commercial general liability policy is defined by its common meaning: "An event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event." Hawkeye-Sec. Ins. Co. v. Davis, 6 S.W.3d 419, 425 (Mo. Ct. App. 1999) (quoting American States Ins. Co. v. Mathis, 974 S.W.2d 647, 650 (Mo. Ct. App. 1998) (internal quotations omitted)). The facts underlying this case are distinguishable from the facts of Superior Equipment Co. v. Maryland Casualty Co., cited by plaintiff in support

7

of its claim. In Superior, the insured sought a defense in a claim arising from chemical releases "includ[ing] but . . . not limited to spills from bulk tanks, leaking drums and tanks, and explosions and resultant leaking from tanks." Superior, 986 S.W.2d at 480. The insurance policies at issue excluded from coverage property damage arising from the dispersal or escape of pollutants, except if "such discharge, dispersal, release or escape is sudden and accidental." Id., 986 S.W.2d at 481. The appellate court concluded that the "allegation of explosions and resultant leaking arguably falls within the 'sudden and accidental' release required by the policies," and thus stated a claim potentially within the policies' coverage. Id. at 482. By contrast, the lead incident in this case cannot "arguably fall" within the plain meaning of an accident: Raineri's petition alleges that plaintiff failed to follow safety procedures under the terms of their agreement and failed to properly remove paint in violation of the OHSA and USEPA's Renovation on Repair and Painting Rule. This deviation from the required safety procedures allowed lead contaminants to be released and spread throughout the Roosevelt High School project site. Damage from the arguably negligent failure to follow safety procedures is vastly different from the explosions and leakage alleged in Superior.

Even if the pollution incident here met the temporal and accidental requirements, coverage is excluded under Sections A.2.k and A.2.q because the pollution incident was created by plaintiff's alleged failure to comply with environmental protection regulations and the pollutant — the lead paint —was not brought to the job site by plaintiff.

"Although Missouri law favors insured parties by determining an insurer's duty to defend based on whether certain facts 'give rise to a claim *potentially* within the policy's coverage,'... use of the word 'potentially' does not render boundless the duty to defend." Interstate, 686 F.3d

8

at 544 (quoting McCormack, 989 S.W.2d at 170 (emphasis in original)). Defendant's duty to defend does not arise under the circumstances of this case.

### C. Ambiguity

Plaintiff argues that, if the Court finds that the Policy does not provide coverage, the matter should nevertheless be resolved in its favor because the Policy language is ambiguous. Plaintiff contends that the Policy provides coverage in the Pollution Endorsement, but then "takes it away" in an additional endorsement entitled "Exclusion-Asbestos, Electro-Magnetic Radiation, Lead and Radon" (the "Lead Exclusion").[3] [Doc. # 38-1 at p. 53]. The Court finds plaintiff's arguments unpersuasive, and holds that the Policy is not ambiguous.

When interpreting an insurance policy, a court must "give terms their plain and ordinary meaning unless it is clear from the policy that the parties intended an alternate meaning." Gavan v. Bituminous Cas. Corp., 242 S.W.3d 718, 720 (Mo. 2008) (en banc). "If the policy language is unambiguous, it must be enforced as written." Dibben v. Shelter Ins. Co., 261 S.W.3d 553, 556 (Mo. Ct. App. 2008). However, "if the language is ambiguous, courts should construe the policy in favor of the insured." Id. The mere "fact that parties disagree over the policy's interpretation does not render a term ambiguous." O'Rourke v. Esurance Ins. Co., 325 S.W.3d 395, 398 (Mo. Ct. App. 2010). Rather, "ambiguity exists where there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different interpretations." Seeck v. Geico General Ins. Co., 212 S.W.3d 129, 132 (Mo. 2007) (en banc). "A court is not permitted to create an ambiguity in order to distort the language of an unambiguous policy, or, in order to enforce a particular construction which it might feel is more

---

[3] The Lead Exclusion modifies the commercial liability coverage and the Pollution Endorsement by excluding from coverage "any claims arising out of or alleged to have arisen out of …any act, error, omission, failure to work, or other duty involving lead or lead products, their use, exposure, existence, detection, removal, elimination, or avoidance."

9

appropriate." Doe Run Res. Corp. v. Am. Guarantee & Liab. Ins., No. SC 96107, 2017 WL 5078078, at *3 (Mo. Oct. 31, 2017) (quoting Rodriguez v. Gen. Accident Ins. Co. of Am., 808 S.W.2d 379, 382 (Mo. 1991) (en banc)).

As plaintiff contends, "it is well-settled that where one section of an insurance contract promises coverage and another takes it away the contract is ambiguous." Jones v. Mid-Century Ins. Co., 287 S.W.3d 687, 692 (Mo. 2009) (en banc). However, "courts may not unreasonably distort the language of a policy or exercise inventive powers for the purpose of creating an ambiguity where none exists." Todd v. Mo. United Sch. Ins. Council, 223 S.W.3d 156, 163 (Mo. 2007) (en banc). "Conflicting clauses in a policy should be reconciled so far as their language reasonably permits; when reconciliation fails, however, inconsistent provisions will be construed in favor of the insured." Jones, 287 S.W.3d at 692.

While the Pollution Endorsement provides coverage for environmental pollution under certain circumstances, that coverage is in fact "limited" and is subject to exclusions which apply here. As discussed above, no coverage is available under the Pollution Endorsement for the lead incident. Thus, plaintiff is incorrect in its assertion that there was coverage "given" by the Pollution Endorsement that was then "taken away" by the Lead Exclusion.

\* \* \* \* \*

In conclusion, the Court finds that plaintiff has not met its burden to prove that coverage is available under the Pollution Endorsement and defendant has met its burden to show that exclusions within the Policy and Pollution Endorsement do apply. Furthermore, plaintiff has failed to show that the policy is ambiguous. Thus, defendant has no duty to defend plaintiff in the Rainieri suit and plaintiff's motion for summary judgment must be denied. The Court will enter judgment in favor of defendant. See Glob. Petromarine v. G.T. Sales & Mfg., Inc., 577

F.3d 839, 844 (8th Cir. 2009) ("[A] determination of summary judgment *sua sponte* in favor of the prevailing party is appropriate so long as the losing party has notice and an opportunity to respond.").

Accordingly,

**IT IS HEREBY ORDERED** that the motion of plaintiff Rice Painting Company for summary judgment [Doc. # 37] is **denied**.

**IT IS FURTHER ORDERED** that a separate judgment in favor of defendant Depositors Insurance Company will be entered.

/s/ *John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 20th day of November, 2017.